**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY RODGERS,** | : | **CIVIL ACTION NO. 1:05-CV-0206** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **EDWARD KLEM,** | : | |
| | : | |
| **Respondent** | : | |

## MEMORANDUM

On October 19, 2006, an evidentiary hearing was held on the sole issue of whether trial counsel was ineffective for failing to object to an all-white jury panel summoned for petitioner Rodney Rodgers' ("Rodgers") criminal trial because it did not represent a fair cross-section of the community. Rodgers appeared with court-appointed counsel. Based on the evidence presented, the court concludes that Rodgers' claim is without merit and will deny habeas relief.

## I.    Standard of Review

This court has previously determined that the state courts did not reach the merits of Rodgers' ineffective assistance of counsel claim. (Doc. 13, p. 9). Consequently, the deferential standards provided by the Anti-terrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1217 ("AEDPA") do not apply.[1] See Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). "In such an

---

[1]The AEDPA precludes habeas relief on a "claim that was adjudicated on the merits in State court proceedings" unless the petitioner has shown that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on

instance, the federal habeas court must conduct a *de novo* review over pure legal

questions and mixed question of law and fact, as a court would have done prior to

the enactment of the AEDPA.  See <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir.

1999).  However, the state court's factual determinations are still presumed to be

correct, rebuttable upon a showing of clear and convincing evidence.  <u>See</u> 28 U.S.C.

§ 2254(e)(1)."  <u>Id</u>.

## II.    <u>Findings of Fact</u>

In December 1999, Rodgers was arrested and charged with criminal

homicide, criminal attempt to commit homicide and aggravated assault in the

County of York, Pennsylvania.  (Notes of Testimony ("N.T.") 4).  In the summer of

2000, Attorney Susanne Smith, who at the time was the First Assistant Public

Defender for York County, was appointed to represent him.  (N.T. 30).  In

preparation for trial, Attorney Smith met with Rodgers numerous times and they

discussed strategy.  (N.T. 7, 31).  He gave her the names of potential witnesses and

an investigator assisted her in locating the witnesses.  (N.T. 31).  She met with

various witnesses, spoke to his family, and visited the scene of the crime.  (N.T. 31).

Although Rodgers claims to have had concerns about the racial composition

of York County juries, he did not express his concern to Attorney Smith because he

"didn't know what to say back then, " "didn't know the law," and "didn't know how

---

an unreasonable determination of the facts in light of the evidence presented in the
State court proceeding." 28 U.S.C. § 2254(d).  By its own terms, § 2254(d) applies
only to claims already "adjudicated on the merits in State court proceedings."

to properly format an affable sentence for something to that effect." (N.T. 8, 9).

However, on the day of jury selection, upon seeing the all-white jury pool enter the

courtroom, Rodgers became immediately concerned.[2]  He states that he expressed

his concern that the jury was not a jury of his peers, but Attorney Smith informed

him that there was nothing that could be done and that this is the pool from which

the jury would be selected.  (N.T. 13).  Attorney Smith testified that she has no

specific recollection of such an exchange but that she "would have told him that the

makeup of York County is a majority of white and very rarely are we seeing non-

white participants on the jury panel." (N.T. 38).  She would have further informed

him that a "jury of your peers is not necessarily a jury of minority members.  It

would be people who live in York County who indicate they can be fair and

impartial." (N.T. 45-46).

Attorney Smith also testified that she did not feel the lack of minorities on the

panel was an issue because the jurors felt that they could be fair and impartial.  She

posed the following questions to the jurors:

> He's a black male.  Is there anyone who believes they cannot be
> fair and impartial?
>
> Mr. Rodgers wants me to be clear on that, he has Puerto Rican in
> his background and I believe Native American Indian in his
> background.  Based on that is there anyone that believes they
> cannot be fair and impartial because of race?

---

[2]Rodgers testified that based upon childhood experiences, he "pretty much
had a feel [sic] about being a different race and my feelings towards being
confronted by a bunch of white people." (N.T. 11, 12).

(N.T. 46).  No one responded that they could not be fair and impartial because of race, and there were no indicators, such as body language or facial expressions, that would have caused her to delve further into the issue.  (N.T. 48-50).  "[W]e asked them if they could be fair and impartial.  They indicated they could despite Mr. Rodgers' race, and being Mr. Rodgers and both Mr. Edwards [the victim] being a minority race, they should be viewed the same by the jury."  (N.T. 45).  When asked whether the outcome may have been different if she objected to the panel, Attorney Smith replied "No" because the "panel was a typical panel in York County."  (N.T. 40).

To further expound on the make-up of jury panels in York County, J. Robert Chuk, who has been employed as the district court administrator for York County since September 1994, was called upon to testify.  (N.T. 57).  Mr. Chuk is responsible for the method utilized to compose jury panels.  (N.T. 57).  In 2000, the approved method required the information services department to compile a random list of prospective jurors from the voter registration roles, per capita tax roles, and York area earned income tax roles and to send those individuals questionnaires.  (N.T. 57-58, 66-67).  Based on the returned questionnaires, a determination was then made regarding eligibility to serve and a master list was created.  (N.T. 71).  From the master list, information services would then randomly draw the needed number of jurors to summon on any given week.  (N.T. 68).

There is no statistical data kept by the county concerning participation in jury panels.  Chuk testified that "We don't track information as to minorities that

participate.  The only way that we know that an individual might be in a minority is when they actually appear on their day to be part of a pool and we can observe who is present in the jury room.  Other than that we don't statistically know what our numbers really will be in terms of minorities."  (N.T. 59.)  Based upon this method of observation, Chuk estimated that minorities comprised one to three percent of the jury panels at the time Rodgers was tried.  (N.T. 61).

In 2005, in addition to the voter registration and tax roles, York County began using drivers' license lists to select prospective jurors.  According to Mr. Chuk, the addition of drivers' licenses appears to have increased the percentage of minorities.  Specifically he states that "[a]necdotally several terms ago I took a look at the pool, I made an informal count, and it worked out to be somewhere in the neighborhood of 5 to 6 percent, which I believe is about the appropriate number of black and Hispanic, which are the primary minorities in York County. . . .  So I felt we had met probably the number that we needed to."  (N.T. 62).  He emphasized that this conclusion is based on his personal observations and has no foundation in statistical data.  (N.T. 62, 74).

## III.   Conclusions of Law

To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced his or her defense.  See Strickland v. Washington, 466 U.S.

668, 687 (1984).[3]  In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions and give counsel the benefit of a strong presumption of reasonableness.  See id. at 689; Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).  Reasonableness must be considered on the facts of the case, viewed as of the time of counsel's conduct.  Strickland 466 U.S. at 689.  Every effort must be made "to eliminate the distorting effects of hindsight," and determine whether "in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." Id.  If it is concluded that counsel's performance was deficient, the court must then determine if "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  Id. at 694.

Rodgers claims that trial counsel was ineffective for failing to object to an all-white jury venire from which his jury was selected because the venire did not represent a fair cross-section of the community.  In a recent case addressing whether a defendant was denied his right to a jury drawn from a fair cross section of the community as required by the Sixth Amendment, the United States Court of Appeals for the Third Circuit set forth the following:

> "[T]he American concept of the jury trial contemplates a jury drawn from a fair cross section of the community. . . . [I]t is part of the established tradition in the use of juries as instruments of

---

[3] The performance and prejudice prongs of Strickland may be addressed in any order that the court deems appropriate, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Strickland, 466 U.S. at 697.

public justice that the jury be a body truly representative of the community." <u>Taylor v. Louisiana</u>, 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (internal quotation marks omitted).  This requirement of a fair cross section is not without substantial limits-it does not guarantee that juries be "of any particular composition." <u>Id</u>. at 538, 95 S.Ct. 692.  All that is required is that "the jury wheels, pools of names, panels, or venires from which juries are drawn *must not systematically exclude distinctive groups in the community* and thereby fail to be reasonably representative thereof." <u>Id</u>. (emphasis added).  The objectives of the fair cross section requirement include avoiding "the possibility that the composition of the juries would be arbitrarily skewed in such a way as to deny criminal defendants the benefit of the common-sense judgment of the community" and avoiding the "appearance of unfairness" that would result from excluding "large groups of individuals, not on the basis of their ability to serve as jurors, but on the basis of some immutable characteristic such as race, gender or ethnic background." <u>Lockhart v. McCree</u>, 476 U.S. 162, 175, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

<u>United States v. Weaver</u>, 267 F.3d 231, 236 (3d Cir. 2001).  In order to establish a prima facie violation of the fair cross section requirement, petitioner must demonstrate: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in jury venires is not "fair and reasonable" in relation to the number of such persons in the community; and (3) the underrepresentation is caused by the "systematic exclusion of the group in the jury selection process." <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979).[4]  Each of these elements must be demonstrated in order for the claim to proceed.  <u>United States v. DiPasquale</u>, 864 F.2d 271 (3d Cir. 1998) (citing <u>United States v. Pepe</u>, 747 F.2d 632, 649 (11th Cir. 1984)).  Upon meeting the elements of a prima facie case, it is the State

---

[4]  A showing of discriminatory intent is not required.  <u>See</u> <u>Duren</u> 439 U.S. at 368 n. 26.

that bears the burden of justifying the infringement by showing attainment of a fair cross section to be incompatible with a significant state interest.  Id. at 368.

Rodgers satisfies the first prong because "African-Americans and Hispanics are 'distinctive groups' for the purposes of a fair cross-section analysis."  U.S. v. Weaver, 267 F.3d 231, 240 (3d Cir. 2001) (quoting Castaneda v. Partida, 430 U.S. 482, 495 (1977)).

To satisfy the second prong, Rodgers must demonstrate "the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement." Duren, 439 U.S. at 364.  Analysis of whether the representation of the group in the jury venire is fair and reasonable in relation to the number of such persons in the community is "at least in part, a mathematical exercise, and must be supported by statistical evidence."  Id.  Accepted statistical analysis includes both the comparative disparity and absolute disparity methods.  Weaver, 267 F.3d at pp. 240-41 n. 11, 242-44 (citing Ramseur v. Beyer, 983 F.2d 1215, 1231 (3d Cir. 1992) (en banc)).  Both methods involve collecting and analyzing data and comparing the percentages of minorities in the population with the percentages of minorities represented in the master list or wheel.  Id.

In the matter sub judice, the parties stipulated to the 2000 Census figures, which establish that minorities accounted for 7.2% of the population of York County in 2000.  (Petitioner's Exhibit 1).  However, no statistical evidence was presented addressing the comparison between the number of persons in the community and

8

the representation of the distinctive groups in the master list or wheel.  Although

Mr. Chuk testified as to his observations of the jury panels that were drawn, this

evidence is insufficient to support a finding of representation that is unfair and

unreasonable.  See <u>Weaver</u>, 267 F.3d 231 (finding that evidence presented through

an expert in demography who, rather than analyzing the master wheel, analyzed

the data compiled from returned questionnaires,  was too weak to support a finding

of representation that is unfair and unreasonable); <u>U.S. v. Lara</u>, 181 F.3d 183, 192

(1st Cir. 1999) (rejecting claim because it was "mere guesswork" to assert a fair

cross-section of the community claim without having any statistics to establish

underrepresentation).  Because Rodgers has failed to establish underrepresentation

of the cognizable group, his claim fails.

Although the Court recognizes that Rodgers' failure to satisfy the second

prong is dispositive of the claim, out of an abundance of caution , the third prong

will be discussed.  "Systematic exclusion" has been defined to mean exclusion

inherent in the particular jury selection process utilized.  <u>Duren</u> at 439 U.S. at 366.

At the pertinent time, the jury selection process utilized by York County involved

the random drawing of prospective jurors from the voter registration roles, per

capita tax roles, and York area earned income tax roles.  There is no evidence in the

record before us that York County's selection of jurors systematically excluded minorities.[5]  Consequently, the third prong is not met.

Rodgers' failure to meet his burden with regard to the underlying claim is fatal to his ineffective assistance of counsel claim.  As noted above, counsel's decisions must be given a strong presumption of reasonableness, and must be considered on the facts of the case, viewed as of the time of counsel's conduct.  In light of the evidence produced at the hearing, the Court concludes that counsel's decision not to object to an all-white jury panel was reasonable and clearly within the range of professionally competent assistance.  Consequently, Rodgers' petition for writ of habeas corpus will be denied.

An appropriate order will issue.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        January 23, 2007

_____

[5]Notably, individual observations that groups are not present are insufficient to prove systematic exclusion.  See Duren, 439 U.S. at 366.  See United States v. Guy, 924 F.2d 702 (7th Cir.1991) (concluding that defendant's observation that no African-Americans were on jury panel was insufficient to establish systematic exclusion); United States v. Diaz, 1993 WL 85764 (E.D.Pa.Mar.25, 1993) (finding that "the defendant's sole observation [that no Hispanics were on the jury panel] fails to show a systematic exclusion as required by Duren").

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY RODGERS,** | : | **CIVIL ACTION NO. 1:05-CV-0206** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **EDWARD KLEM,** | : | |
| | : | |
| **Respondent** | : | |

## ORDER

AND NOW, this 23rd day of January, 2007, for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  The petition for writ of habeas corpus (Doc. 1) is DENIED with respect to the issue of whether trial counsel was ineffective for failing to object to an all-white jury venire.

2.  A certificate of appealability is DENIED.  <u>See</u> 28 U.S.C. § 2253(c).

3.  The Clerk of Court is directed to CLOSE this case.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge